[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE (#106)
This memorandum addresses the motion to strike submitted by the defendants on July 22, 1999 (#106). The underlying action arises from injuries sustained by Carole Lemp on September 9, 1994, when she was attacked in East Granby by a dog owned by the Pericozzi family, then residents of that town.[1] The original complaint, dated April 28, 1999 and bearing a return date of May 25, 1999, was brought by Lemp and her husband, Michael Lemp, against the Town of East Granby and Linda L. Rossetti, the town's dog warden and animal control officer, alleging their responsibilities for the plaintiffs' injuries.[2] Generally, the defendants allege that each of the five counts of the complaint dated April 28, 1999, pending against the named defendant and its dog warden, is insufficient as a matter of law. The plaintiff's contest this argument, and submit that the complaint, as drafted, adequately states separate causes of action which meet the relevant legal standards. The court finds these matters in favor of the plaintiff's in part, and in favor of the defendants in part.
The complaint has been brought in five counts, which are briefly summarized as follows: Count One, directed at the defendant municipality, raises claims of negligent hiring and retention of the dog warden, in the face of the Pericozzi dog's known history of vicious attacks against human beings. Count Two alleges the negligence of the dog warden in prematurely releasing this aggressive dog from quarantine, in failing to destroy the dog, and in deferring decisions about the dog's future to the Commissioner of Agriculture, when such responsibility was vested in her. Count Three, also pending against the dog warden, alleges her reckless and wanton acts in prematurely releasing the aggressive dog, failing to destroy the dog in a timely manner, and in failing to notify the Commissioner of Agriculture that the dog required destruction. Count Four, brought against both defendants, alleges that their "carelessness and/or negligence created and maintained a nuisance." Count Four, ¶ 15. Count Five, also brought against both defendants, sounds in absolute nuisance. Count Six presents the loss of consortium claims of Michael Lemp, husband of the plaintiff Carole Lemp, against CT Page 11567 both defendants. Count Seven, the final count of the complaint, presents the plaintiffs' claims for indemnification pursuant to General Statutes § 7-465.
The defendants have presented five separate arguments in support of their motion to strike.[3] The defendants allege that the first count, brought against the Town of East Granby alone, must fail as the defendant municipality is immune from liability for the acts described in the complaint. As to the second count, brought against the defendant dog warden, it is asserted that this must fail as the municipal employee is similarly cloaked with immunity for the discretionary or governmental acts alleged. The defendant dog warden claims that the third count of the complaint, ostensibly based upon a claim of recklessness, fails to do anything more than reassert the allegations of negligence with conclusory claims of a new mental state, which cannot fulfill the pleading requirements of such a cause of action. The defendants claims that the fourth count of the complaint, ostensibly based on the creation and maintenance of a nuisance condition, fails to contain the requisite allegation of intentional interference with a public right, and thus is insufficient as a matter of law. As the claim of absolute nuisance which the plaintiff's attempt to set forth through the fifth count, the defendants maintain that this, too, must fail in the absence of allegations establishing an intentional creation of the conditions at issue. While the defendants' memorandum of law in support of their motion to strike does not specifically address the derivative sixth and seventh counts of the complaint, the court imputes the foregoing arguments to those later counts, as well.
In considering the defendants' present arguments in support of their motion to strike, the court has heeded the applicable legal principles. "The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc.v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 n. 2,650 A.2d 153 (1994); see also Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). When considering a defendant's motion to strike, "[t]he court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). Thus, the limited role of the trial court in ruling on this motion to strike is to examine the complaint, construed in favor of the plaintiffs, and to determine whether the plaintiffs have stated a legally sufficient cause of action therein. See Napoletano v. Cigna Healthcare of Connecticut,Inc., 238 Conn. 216, 232-33, 680 A.2d 127 (1996). CT Page 11568
As Connecticut is a "fact pleading" state, Section 10-1 of the Practice Book requires that "Each pleading . . . contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved. . . ." "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . What is necessarily implied [in an allegation] need not be expressly alleged." (External citation omitted; brackets in the original.) Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998); see also Alarm Applications Company v. Simsbury Volunteer Fire Company,179 Conn. 541, 545, 427 A.2d 822 (1988), cited by the defendant, andWright v. Brown, Wright v. Brown, 167 Conn. 464, 470, 356 A.2d 176
(1975).
 COUNT ONE
The defendants present one argument in support of their motion to strike Count One of the Complaint, claiming that the venerable concept of municipal immunity bars the plaintiffs from proceeding with the presented claims against the Town of East Granby. While not denying the basic precepts upon which the Town relies, the plaintiff counters that the negligence alleged in the first count constitutes a ministerial act, which should be performed without discretion, and that thus the doctrine of municipal immunity is inapposite to this count. The court finds this issue in favor of the plaintiffs.
It is well-acknowledged that "under the common law, barring the possible application of an exception, both municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion. . . . A Municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . Ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion. . . ." (Citations omitted; internal quotation marks and brackets omitted; footnote omitted.) Elliott v. City ofWaterbury, 245 Conn. 385, 411, 715 A.2d 27 (1998) (opening public watershed land to hunting and regulating the property found to constitute governmental acts). In contemporary times, thus, our courts have thus recognized that a municipality will not be protected by the governmental immunity doctrine if it fails to properly perform what is found to be a ministerial, rather than a discretionary act. Gordon v. BridgeportCT Page 11569Housing Authority, 208 Conn. 161, 170-71, 544 A.2d 1185 (1981). "Notwithstanding the procedural posture of a motion to strike, this court has approved the practice of deciding the issue of governmental immunity as a matter of law." Id., 170.
In arguing that the principles of municipal immunity shield the allegations set forth in Count One of the complaint, the defendants rely on their assumption that the conduct there alleged constitutes discretionary or governmental acts, which cannot form the basis of a cause of action against a municipality. The plaintiffs counter that the defendants have unfairly and unreasonably limited their construction of the facts as alleged. Instead, the plaintiffs emphasize the contents of Count One ¶ 12, in which they claim, inter alia, that the Town of East Granby was negligent in hiring and retaining an "unqualified" person to hold the position of dog warden and animal control officer. Count One ¶ 12.a. The plaintiffs argue that the specific terms of General Statutes § 22-331 (b) direct a municipality to hire, as its dog warden, only a person who holds the "qualifications" prescribed by the Commissioner of Agriculture.[4] They claim, through the allegations of Count One ¶ 12.a., to have alleged that the Town of East Granby failed to meet this basic and fundamental expectation established by the statute, in choosing to hire Rossetti. The court finds this allegation to compelling set forth an unequivocal obligation on the part of the municipality at issue, as the statute directs the Town of East Granby to perform the nondiscretionary act of appointing only a dog warden who meets the Commissioners prescribed qualifications. If the municipality failed to perform this task in accordance with the requisites of § 22-331
(b), they failed to perform a ministerial duty in the manner prescribed by law.
The defendants rely upon two cases for the general proposition that issues of municipal "hiring, firing and/or training personnel" are based upon discretionary acts, protected by governmental immunity.[5]
Defendants' Memorandum of Law in Support of Motion to Strike (July 22, 1999). In taking the position noted above, however, the plaintiffs have raised an issue which is distinct from that addressed by cases which focus on the discretionary selection of a particular candidate for a municipal or governmental position. The plaintiffs have not merely alleged that the Town of East Granby was negligent in hiring or retaining a qualified job candidate, who thereafter failed to meet job specifications. They have also asserted that the Town was negligent in failing to appoint a dog warden who possessed the statutorily imposed qualifications for the job. Insofar as such assertions are concerned, therefore, the defendants' reliance on its cited cases is inapposite.
The defendants may argue that any undertaking by municipal CT Page 11570 representatives in the hiring or retention of East Granby's dog warden constitutes a direct effort to protect the general population from dangerous creatures, and thus represents a definitively public act which is protected by the doctrine of municipal immunity. Even if the Town of East Granby's responsibility, in hiring and retaining Rossetti, is seen to be represent a public obligation, it is important to remember that" a breach of a public duty may still result in liability for the official if the act that he or she negligently performs is a ministerial act. See, e.g., Wright v. Brown [supra, 471-72] (failure to quarantine dog, although a violation of a duty to the public, was ministerial act and demurrer overruled)." Gordon v. Bridgeport Housing Authority, supra,208 Conn. 169-170.
A fair and reasonable review of the factual allegations within Count One viewed in the light most favorable to the plaintiff; with logical inferences implied therefrom, establishes the plaintiffs claim that the Town of East Granby indeed negligently performed ministerial acts which, while directed at protecting the public, were required to be accomplished in a specific manner according to the General Statutes § 22-331 (b). See Pamela B. v. Ment, supra, 244 Conn. 308; Napoletano v. CignaHealthcare of Connecticut, Inc., supra, 238 Conn. 232-33. Whether the plaintiffs can meet their burden of proof on this issue remains to be resolved. If those facts alleged in Count One are proved by a preponderance of the evidence, however, the plaintiffs would have demonstrated a violation of a ministerial obligation, fulfilling the legal requirements of their cause of action and vitiating the defendant Town's claim that it is protected by the principles of municipal immunity. "[i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." Napoletano v. Cigna Healthcare of Connecticut, Inc., supra, 232-33; see also Kovacs v. Kasper,41 Conn. Sup. 225, 226, 228, 565 A.2d 18 (1989). Accordingly, the defendant Town of East Granby cannot prevail on this aspect of its motion to strike.
 COUNT TWO
In support of its motion to strike Count Two of the complaint, the defendants claim that the plaintiffs' allegations therein are "insufficient as a matter of law as the acts of negligence alleged involved discretionary acts by the defendant dog warden, Linda Rossetti and hence are protected under the doctrine of government immunity." Defendants' Memorandum of Law in Support of Motion to Strike (July 22, 1999). The plaintiffs respond again by arguing a factual point, that the defendant Rossetti failed to exercise any discretion at all under the circumstances of this case, but released the Pericozzi's aggressive dog in the absence of any understanding "that she had the authority to order CT Page 11571 the dog destroyed" instead. Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Sept. 22, 1999). The court finds this issue in favor of the plaintiffs.
The law of this state has distinguished the application of governmental immunity to municipalities from its application to their employees. "Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. . . . The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . [T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense. . . where the resolution of those factual issues is properly left to the jury." (Citations omitted; quotation marks omitted; brackets in the original.) Tryon v. North Branford, 58 Conn. App. 702, 708, ___ A.2d ___ (2000).[6]
Our appellate law contains only rare reference to the construction of the duties assumed by a dog warden or municipal animal control officer in the context of a negligence action. Wright v. Brown, supra, was based upon the specific allegation that a dog had been permitted by the warden to roam freely before the statutorily mandated quarantine period had expired, and that this negligent premature release had caused injuries to the plaintiff. Wright v. Brown, supra, 167 Conn. 464, 466-67. Such an action was found to constitute a ministerial act based, in part, upon the Supreme Court's recognition that the plaintiff had alleged the violation of a specific statutory obligation. Id., 471-472. Accordingly, the plaintiff in that matter was permitted to proceed with her action against the defendant municipality and its dog warden. Id., 472.
The court has relied upon the letter and spirit of Wright v. Brown in evaluating the allegations set forth in Count Two of the plaintiffs' complaint, and has construed those allegations in the manner most favorable to the pleader, "broadly and realistically rather than technically." Commercial Union Ins. v. Frank Perrotti Sons,20 Conn. App. 253, 256, 566 A.2d 431 (1989). In so doing, the court has adhered to the axiom reiterated in Wright v. Brown, recognizing that "[w]hat is necessarily implied need not be expressly alleged." (Citations omitted.) Wright v. Brown, supra, 167 Conn. 470.[7]
Generally, [t]he word "ministerial" refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or CT Page 11572 discretion. Wright v. Brown, [supra, 471]. Fraser v. Henninger,173 Conn. 52, 60, 376 A.2d 406 (1977)." Evon v. Andrews, 211 Conn. 501,505, 559 A.2d 1131 (1989). The allegations of Count Two, read in their entirety, set forth basic conditions, such as the knowledge of certain job functions, which the court must consider, at this stage of the proceedings, to have been pleaded by the plaintiffs in good faith. The allegations of Count Two, ¶ 12 and particularly the assertions implicit in ¶ 12.a., e., and e., thus broadly interpreted, impute to Rossetti the obligation to perform certain tasks, in a prescribed manner without the exercise of discretion, and further establish that she failed to fulfill these obligations. As noted in the discussion of Count I, above, whether the plaintiffs can meet their burden of proof on this issue remains to be determined. If those facts alleged in Count Two are proved according to the applicable legal standard, however, the plaintiffs would have demonstrated that Rossetti misperformed a ministerial act, as opposed to a discretionary act, thus fulfilling the legal requirements of their cause of action and vitiating the defendant dog warden's claim that she is protected by the principles of municipal immunity. Tryon v. NorthBranford, supra, 58 Conn. App. 708. "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied."Napoletano v. Cigna Healthcare of Connecticut, Inc., supra,238 Conn. 232-33. Id.; see also Kovacs v. Kasper, supra, 41 Conn. Sup. 226,228. Accordingly, the defendant Town of East Granby cannot prevail on this aspect of its motion to strike.
 COUNT THREE
The defendants move to strike the Third Count of the plaintiffs' complaint on the grounds that it does not sound in recklessness, and "does not contain anything other than allegations sounding in negligence." Defendants' Memorandum of Law in Support of Motion to Strike (July 22, 1999). The plaintiffs contend that their complaint clearly and explicitly set forth facts, in Count Three, which plead a cause of action for reckless conduct on the part of the dog warden, Rossetti. Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Sept. 22, 1999). The court finds this issue in favor of the plaintiffs.
In addressing this aspect of the defendants' arguments, the court's primary concern is whether the plaintiffs have stated facts sufficient to support a claim based on common law recklessness. See Pamela B. v. Ment, supra, 244 Conn. 308; Napoletano v. Cigna Healthcare of Connecticut, supra, 238 Conn. 232-233. The principles and standards of reckless conduct have long been recognized at common law. See, e.g., Kowal v.Hofher, 181 Conn. 355, 361-62, 436 A.2d 1 (1980). Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which CT Page 11573 would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. Begley v.Kohl Madden Printing Ink Co., 157 Conn. 445, 450-51, 254 A.2d 907
(1969), quoting 2 Restatement, Torts 500, comment g." (Quotation marks omitted in part.) Bishop v. Kelley, 206 Conn. 608, 614-15, 539 A.2d 108
(1988).
In Count Three, ¶ 12 the court finds that the plaintiff has clearly and specifically set forth facts which, if credited by the jury, would meet the elements of common law recklessness, as opposed to the standards required for merely negligent conduct as set forth in Count Two. In Count Three, contrary to the defendants' assertions, the plaintiffs have done far more than merely restate the allegations sounding in negligence, and "`relying on the same fact pattern as the negligence count.'" (Citation omitted.) Defendants' Memorandum of Law in Support of Motion to Strike (July 22, 1999). Rather, the plaintiffs have alleged specific facts relating to the dog warden's state of mind and from which, if proved, the jury may properly infer that she acted under circumstances that either imputed to her knowledge of the serious danger to others involved in it or . . . knowledge of facts which would disclose this danger to any reasonable while recognizing that this method of performing her tasks must have involved a risk substantially greater . . . than that which is necessary to make his conduct negligent" Bishop v. Kelley, supra, 206 Conn. 614-615. The court is not bound to accept the defendants' characterization of the facts set forth in Count Three, and finds that a fair reading of these allegations, with the implications drawn therefrom, if believed by the trier of fact, warrants a conclusion of reckless conduct by Rossetti.[8] Pamela B. v. Ment, supra,244 Conn. 308. As the plaintiffs have stated facts sufficient to legally support their cause of action, the defendants cannot prevail with this argument.
 COUNT FOUR
The defendants claim that Count Four of the complaint fails to assert factors sufficient to meet the nuisance grounds on which it is ostensibly based. Specifically, the defendants assert that Count Four fatally fails to assert that Carole Lemp's injury arose from her exercise of a public right in the property where the dog attacked her. The defendants further assert the element of "intent" must be pleaded and proved in order for the plaintiffs to prevail in this count based on general nuisance principles, and that this allegation is absent from the complaint, rendering Count Four vulnerable to their motion to strike. Defendants' Memorandum of Law in Support of Motion to Strike (July 22, 1999). In response, the plaintiffs have constructed a novel and complex argument CT Page 11574 incorporating aspects of their allegations of negligence, and asserting that the requisite intentionality and public right aspects of the pleadings are satisfied through their reference to the defendants' continued maintenance of and failure to abate the conditions resulting from that negligence. Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Sept. 22, 1999). The court finds this issue in favor of the defendants.
A close examination of the allegations within Count Four reveals that they effectively incorporate ¶ 1 through ¶ 14 of Count One, thus reiterating the relevant paragraphs relating to the defendant Town of East Granby's negligence in hiring and retaining Linda Rossetti as its employee charged with animal control responsibilities. In these paragraphs, Count Four thus again alleges Rossetti's employment history with the town; her knowledge of the 1994 incident involving an attack by the Pericozzi family's dog; her quarantine of this dog and its release to the Pericozzi's; the Pericozzi family's removal from East Granby to take up residence in another town; the dog's subsequent attack on Carole Lemp in 1997 in this town nearby to but outside of East Granby; the non-economic injuries sustained by Carole Lemp; and the municipality's negligent failure to intervene, supervise, review, or correct the circumstances allegedly caused by Rossetti's continued service as its dog warden. Paragraphs 16 through 18 of Count Four reassert Lemp's claim for economic damages and her loss of the ability to enjoy life's pleasures. Count Four adds, through ¶ 15, the claim that "[t]he defendants' carelessness and/or negligence created and maintained a nuisance." (Emphasis added.)
Elliot v. City of Waterbury, supra, upon which the defendants rely, has reaffirmed the general principles which the court must observe in determining whether the plaintiffs have adequately stated a cause of action in common law public nuisance. common-law nuisance claim consists of four core elements: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. (Internal quotation marks omitted.) State v. Tippetts-Abbett-McCarthy-Stratt on,204 Conn. 177, 183, 527 A.2d 688 (1987). . . . In addition, because the plaintiffs injury was not related to a right which [the plaintiff] enjoys by reason of [her] ownership of an interest in land; Webel v. YaleUniversity, 125 Conn. 515, 525, 7 A.2d 215 (1939); and, therefore, cannot be sustained as a private nuisance, the plaintiff has the additional burden associated with establishing a public nuisance, namely, proving that the nuisance interferes with a right common to the general public.Higgins v. Connecticut Light Power Co., 129 Conn. 606, 611, 30 A.2d 388
CT Page 11575 (1943). Finally, in order to overcome the governmental immunity of municipal defendants where it applies, the plaintiff must prove that the defendants, by some positive act, intentionally created the conditions alleged to constitute a nuisance. Keeney v. Old Saybrook, 237 Conn. 135,165-66, 676 A.2d 795 (1996); Wright v. Brown [supra, 470] ("[l]iability in nuisance can be imposed on a municipality only if the condition constituting the nuisance was created by the positive act of the municipality)." Elliott v. City of Waterbury, supra, 245 Conn. 420-21.
The defendants claim that Count Four fails to meet the fundamental criteria for establishing a cause of action based on the nuisance principles reaffirmed in Elliott v. City of Waterbury, supra. They note the lack of allegations that the danger arguably created by their negligence created a continuing condition, and they emphasize the want of any allegations sufficient to establish that Carole Lemp was in the exercise of a public right at the time she was attacked by the Pericozzi's dog. The defendants further avail themselves of another application of the doctrine of governmental immunity by citing, in Count Four, the absence of any language asserting that the conditions allegedly constituting a nuisance were intentionally created by some positive act of the municipality and/or its employees. Defendants' Memorandum of Law in Support of Motion to Strike (July 22, 1999). The court finds that the defendants' approach to the facts of this case is supported by the applicable caselaw, and that, due to the above noted defects, Count Four of the plaintiffs' complaint does not sufficiently state a cause of action based on public nuisance.
The plaintiffs rely, in large part, upon the principles of intentionality and public right they find to have been set forth by the Supreme Court in Keeney v. Town of Old Saybrook, 237 Conn. 135,676 A.2d 795 (1996). Unlike the present tort action, Keeney v. Town ofOld Saybrook commenced with an action for declaratory and injunctive relief and for civil penalties brought by the commissioner of the Department of Environmental Protection against the defendant municipality, for allegedly violating orders for abatement of long-standing pollution in the Connecticut River. Id., 137. The pollution, consisting of discharge from residential septic systems that were inadequate or failing, had resulted in contamination of groundwater and the Connecticut River that was first documented in 1981. Over the ensuing eight years, as the conditions persisted, the commissioner had issued timely orders for correction and remediation of the pollution sources and wastewater failures, without appeal or compliance by the defendant municipality. The Supreme Court found that the majority of these orders were properly issued, and that the consequent civil penalties were appropriate under those circumstances.[9] Id., 142. CT Page 11576
The Keeney v. Old Saybrook court noted that such pollution as existed was, by statutory definition, a common law public nuisance. Id., 162. This conclusion was made possible, in large part, by its reliance upon the trial court's conclusion that Old Saybrook had effectively caused pollution by failing to follow the commissioner's orders, by failing to take specific steps to stem the pollution or to report its compliance and, in sum, by not abating the pollution which it can best abate. Id., 166. However, notwithstanding this nonfeasance or misfeasance, the Supreme Court's opinion in Keeney v. Old Saybrook also noted that the trial court's finding that Old Saybrook has caused pollution is not sufficiently specific with respect to whether Old Saybrook' s continuing conduct over time in creating a public nuisance, in light of the various orders, rose to the level of intentional conduct. . . ." and thus remanded the matter for additional findings. Id., 167.
Such a conclusion was necessary since the Keeney v. Old Saybrook court recognized that "[b]ecause Old Saybrook is a municipality, it would not be liable for maintaining a public nuisance through its failure to abate pollution under the common law if its conduct were merely negligent nonfeasance." Id., 163. A positive act would be required on the part of the municipality, in order to establish its liability for the damages caused by the nuisance. Id., 164. The court held that "[w]ithout decidingwhat the law of municipal liability may be in other contexts, in light of the strong public policy manifested by the environmental protection statutes, a municipality may be liable for a public nuisance that it intentionally creates through its prolonged and deliberate failure to abate that nuisance." (Emphasis added; footnote omitted.) Id., 166. This holding must be read in the light of the court's comment that, prior to confronting the claims brought by the commissioner against Old Saybrook, it had never held that a municipality is not liable for an intentional nuisance created through its failure to abate pollution." (Emphasis added; footnote omitted.) Id., 165.
The plaintiffs urge the court to impute this analysis to Count Four's allegations that in hiring and retaining Rossetti as its dog warden, without the qualifications specified in General Statutes § 22-331 (b) or appropriate training or supervision, the town created a danger to the general public that the defendant dog warden would be unable to adequately safeguard the public," and thus met the elements necessary for pleading an action in public nuisance. Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Sept. 22, 1999). They argue that the resulting natural tendency to create danger and inflict injury upon person or property would serve to satisfy the first element of a public nuisance as set forth in Elliott v. City of Waterbury, supra. Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Sept. 22, 1999). They further argue that the town's intentional and deliberate act of CT Page 11577 releasing the dog back into the general population" and the failure of its dog warden to remove the vicious dog from the general public by destruction" rise to the level of the intentionally created nuisance as defined through Keeney v. Old Saybrook, supra. See Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Sept. 22, 1999). The plaintiffs would have the court identify the defendant town's actions with regard to its tolerance of Rossetti and the Pericozzi's dog as constituting actions which were clearly intentional, prolonged and deliberate," thus voiding any protection that might otherwise be provided through the applicable principles of municipal immunity. Id.
While interesting and engaging, the plaintiffs' arguments belie certain fundamental aspects of the Keeney v. Old Saybrook decision. First, by its very terms, the effect of the opinion is limited to cases which give rise to consideration of the strong public policy manifested by the environmental protection statutes" of this state. Keeney v. OldSaybrook, supra. 237 Conn. 166. The opinion emphasizes that it is not considering matters other than those which may arise in the context of municipal responsibility for the creation of environmental dangers. Such statutes and specific environmental public policy considerations, as contemplated by Keeney v. Town of Old Saybrook, fall well outside the scope of the issues raised in the pending private litigation between the Lemps, the Town of East Granby, and its dog warden. Second, the Keeneyv. Town of Old Saybrook opinion focuses on the length of time involved in the dispute between the commissioner of environmental protection and the municipality, a period of at least eight years in which multiple pollution abatement orders were issued, ignored or followed in a desultory manner, and in which the residents of the town, and others exposed to its downwater, were subject to hazards created by the failing septic systems and continued discharge of improperly renovated wastewater. Id., 137-38. Applying this duration and extent of harm" analysis to the pending matter, in which the Pericozzi dog attacked its first human victim in 1994 and its second victim in 1997, the continuing nature of any nuisance condition that may have existed as the result of any acts by the Town of East Granby or its dog warden, and the extent of harm caused by such condition, are so limited in time and so circumscribed as to the number of persons affected as to render inapposite the public extent analysis employed in Keeney v. Town Old Saybrook, where many people were affected over a period of years. Third, under the factual circumstances presented by Keeney v. Town of Old Saybrook case, any nuisance created by the defendant municipality would, by its very nature, involve substantial interference with a right common to the general public, to wit, pollution of the common water supply. Id., 161. See Elliott v. City of Waterbury, supra, 245 Conn. 420-21.
Despite the plaintiffs' vigorous factual contention that the Carole CT Page 11578 Lemp was exercising a right common to the general public as she entered upon the Pericozzi's new residence in 1997, and when she was greeted by their libertime canine, the court is not persuaded that the facts of the pending matter meet the criteria necessary to establish an interference with a common right, such as that set considered in Keeney v. OldSaybrook, supra (pollution of public waters) or Elliott v. City ofWaterbury, supra (death of jogger, killed by a hunter, when both were using public reservoir property).[10] The plaintiffs have failed to present rationale or authority sufficient to persuade the court that Carole Lemp was exercising a public right when she entered upon the premises of the attacking dog's owner, and the court finds no basis for concluding that this necessary element of the common law public nuisance claim has been satisfied by the pleadings.
Even if the court was persuaded by the plaintiffs' argument that the Town of East Granby or its animal control officer could reasonably be found to have created a nuisance through its failure to remedy the conditions involving the continued existence of a dog known to attack humans, other features of their complaint stand as barriers to the application of that argument to the circumstances of this case. As noted, the allegations of the complaint should be construed in a manner most favorable to the p leaders when considering the opponents' motion to strike, and facts which may be implied from the pleadings need not be expressly alleged. Pamela B. v. Ment, supra, 244 Conn. 308. However, the plaintiffs' very argument requires the court to do more than draw reasonable and logical inferences from the facts they have alleged: they would force the court to stretch and bend the words of the complaint, which contains no explicit statement of the "positive act of the municipality" or its agent, in order to mold Count Four to meet the requirements of a common law statement of public nuisance. The plaintiffs have cited no rule of law that would support such editorial interpretation by the court. It must be emphasized that Count Four contains a single allegation specifically related to the ostensible purpose of that count, through ¶ 15's claim that "[t]he defendants' carelessness and/or negligence created and maintained a nuisance." There is inadequate reference, within this count, to serve as a reasonable basis for the plaintiffs' asserted factual construction, which would make the continued hiring and retention of Rossetti, the dog warden, and/or the continued existence of the Pericozzi's dog, turn Carole Lemp's entry onto the Pericozzi's property, in a town other than East Granby, into a situation that "interferes with a right common to the general public."Keeney v. Old Saybrook, supra, 237 Conn. 163; see also Elliott v. City ofWaterbury, supra, 245 Conn. 420, 421 (court unable to find, from the facts presented, that municipal defendants, by some positive act, intentionally created the conditions alleged to constitute a nuisance). The plaintiffs here ask the court not only to bend the facts, but also to CT Page 11579 bend the rules relevant to interpretation of the complaint. Despite the vigor and assiduousness of their submission, and the plaintiffs simply have provided insufficient legal reason for so doing under the circumstances of this case.
Even viewed in the most expansive light, the allegations of Count Four neither effectively assert facts showing that Carole Lemp was in the exercise of a right common to the general public, nor that the Town of East Granby or its employee acted in a positive manner, intentionally, in creating the conditions that led to the dog attack at issue. Elliott v.City of Waterbury, supra, 245 Conn. 420-421. The reference to the defendants' carelessness and/or negligence in creating and maintaining a nuisance, set forth through Count Four, ¶ 15, represent nothing more than bald conclusions of law in the context of the other allegations set forth in this count. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992); see also Bennett v. ConnecticutHospice, Inc., 56 Conn. App. 134, 136-37, 741 A.2d 349 (1999). As such is the condition that exists here, the plaintiffs' claims for nuisance, presented through Count Four and incorporated into Counts Six and Seven, must fail as a matter of law, and the defendants are entitled to succeed on this aspect of their motion to strike.
 COUNT FIVE
In support of their motion to strike Count Five of the complaint, the defendants again claim that the plaintiffs' have failed to submit any allegations sufficient to support the element of "intent," and that this element must be alleged and proved in order for the plaintiffs to prevail on the plaintiffs' ostensible claim of absolute nuisance. The defendants further assert that Count Five constitutes nothing more than a reiteration of the allegations of Count Four, and that this repetition constitutes insufficiency as a matter of law. Defendants' Memorandum of Law in Support of Motion to Strike (July 22, 1999). The plaintiffs' contest this position, arguing "[t]hat the defendant, Town, intended to hire a dog warden unqualified for the position and intended to allow her to act without knowledge and understanding of her position and thereby release a vicious dog is clearly alleged and supports the claim of absolute nuisance." Plaintiffs' Memorandum of Law in Opposition to Motion to Strike (Sept. 22, 1999). The court finds this issue in favor of the defendants.
As noted above, Connecticut law requires four specific elements to be proved before a plaintiff can succeed in a nuisance action: (1) the condition complained of had a natural tendency to create danger and CT Page 11580 inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the defendant's land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." Filisko v. Bridgeport HydraulicCo., 176 Conn. 33, 35-36, 404 A.2d 889 (1978)." Green v. Ensign-BickfordCo., 25 Conn. App. 478, 490, 595 A.2d 1383 (1991); see also Elliott v.City of Waterbury, supra, 245 Conn. 420-21. It has also been recognized that [c]laims of nuisance fall into two discrete categories: (1) absolute nuisance and (2) negligent nuisance. The principal distinction between the two is that an absolute nuisance has the added requirement that the conduct be intentional. . . . Intentional, in this context, means "not that a wrong or the existence of a nuisance was intended, but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance."(Footnote omitted; citations omitted; quotationmarks omitted.) Green v. Ensign-Bickford Co., supra,25 Conn. App. 490.
Having submitted Count Five to the court with the caption "Absolute Nuisance", the plaintiff argues that the allegations of this count sufficiently plead a cause of action sounding under that category of nuisance. A review of the contents of Count Five, however, leads the court to conclude that the plaintiffs have not satisfied the requirement of stating facts which are adequate to support claims brought pursuant to this legal theory of recovery. The allegations within Count Five reveals that they effectively incorporate ¶ 1 through ¶ 14 of Count One, and thereby again restate the relevant paragraphs relating to the defendant Town of East Granby's negligence in hiring and retaining Linda Rossetti as its employee charged with animal control responsibilities. Through these paragraphs, Count Five thus again sets forth basic facts related to Rossetti's employment history with the town; her knowledge of the 1994 incident involving an attack by the Pericozzi family's dog; her quarantine of this dog and its release to the Pericozzi's; the Pericozzi family's removal from East Granby to take up residence in another town; the dog's subsequent attack on Carole Lemp in 1997 in this town nearby to but outside of East Granby; the non-economic injuries sustained by Carole Lemp; and the municipality's negligent failure to intervene, supervise, review, or correct the circumstances allegedly caused by Rossetti's continued service as its dog warden. As with Count Four, Paragraphs 16 through 18 of Count Five reassert Lemp's claim for economic damages and her loss of the ability to enjoy life's pleasures. Count Five adds an additional allegation, through ¶ 15, asserting the claim that "[t]he failure to destroy the Pericozzi dog and the release of the Pericozzi dog, when the same was known to be very aggressive and known to have attacked other people and animals, had a natural tendency to cause danger and inflict injury and was a nuisance in fact." CT Page 11581
The question for the court is thus whether this count, taken in its entirety and construed in favor of the plaintiffs, states a legally sufficient cause of action sounding in absolute nuisance. See Napoletanov. Cigna Healthcare of Connecticut, Inc., supra, 238 Conn. 232-33. Applying the rule of absolute nuisance as noted in Green v.Ensign-Bickford Co., supra, the court is called upon to determine whether these facts support the conclusion that the Town of East Granby and its dog warden intended, by releasing the Pericozzi's dog in 1994, to bring about the result that the dog would remain at liberty, in its aggressive condition, that this condition in and of itself constituted a nuisance.Green v. Ensign-Bickford Co., supra, 25 Conn. App. 490.
Under the principles of absolute nuisance enunciated in Green v.Ensign-Bickford Co., supra, the facts of the complaint must state, or permit the inference that the defendants, or either of them, intended to bring about the conditions that resulted in direct injuries to Carole Lemp and derivative injuries her husband, Michael Lemp. Id., 490-491. Using the analysis suggested in Green v. Ensign-Bickford Co., supra, Count Five of the complaint fails to support any reasonable conclusion that the Town of East Granby and/or Linda Rossetti in any way "wanted" to create conditions which would result in any of the type alleged to have occurred at the Pericozzi's home.[11] Id., 491. Additionally, neither the plaintiffs' allegations in Count Five nor their argument on this issue effectively not support their contention that the critical element of "intent", seemingly missing from Count Five, is actually present. Id. The lack of intent to create an absolute nuisance is dispositive of the plaintiffs' claims that this count sufficiently in stating an adequate basis for a claim based on absolute nuisance. Id. While the plaintiffs' attempt to find succor in a definition of intention found within Keene v. Town of Old Saybrook, supra, and cases cited therein, only an overextended and unreasonable interpretation of the element of intent could be thus imputed to Count Five as now drafted. In this count, the plaintiffs have failed to adequately allege the requisite elements of absolute nuisance upon which this aspect of their cause of action is apparently based. As they have failed to do so, their argument in opposition to the motion to strike cannot survive, and the defendants will prevail on this issue of their motion to strike.
 CONCLUSION
The foregoing cases and principles of law support the court's determination that while portions of the plaintiffs' complaint sufficiently state the factual basis necessary to establish the causes of action asserted in negligence and reckless conduct against the defendant Town of East Granby and the defendant Linda Rossetti, they have failed to sufficiently plead a cause of action sounding in common law or absolute CT Page 11582 nuisance in this matter.
WHEREFORE, the defendants' joint motion to strike (#106) Counts One, Two, and Three and the relevant portions of Counts Six and Seven of the plaintiffs' complaint dated April 28, 1999 is hereby DENIED, and the motion to strike (#106) Counts Four and Five and the relevant portions of Counts Six and Seven of the plaintiffs' complaint dated April 28, 1999 (#106) is hereby GRANTED.
BY THE COURT,
N. Rubinow, J.